## WHIT CHENAULT v. THE STATE.

### No. 2749.   Decided June 8, 1904.

**1.—Accessory After the Fact.**

No one can be an accessory after the fact in this State, such as disqualifies him as a witness, unless he comes within the letter and spirit of article 86, Penal Code, that is, he must give some aid and assistance to the principal before he can be guilty; he must conceal the offender, or give him some other aid in order that he may evade arrest or trial.

**2.—Same—Agreement Not to Prosecute.**

Testimony to the effect that the State's witnesses had made an agreement to conceal the alleged offense of forgery of a check by defendant, and for a consideration had agreed with defendant's father not to prosecute his son, was not admissible to show that said witnesses were accessories after the fact to the crime under investigation, but could only be used for the purpose of impeachment. Overruling Gatlin v. State, 40 Texas Crim. Rep., 116.

**3.—Same—Independent Criminality Necessary.**

In order to make one guilty as an accessory after the fact, there must be some independent criminality, such as furnishing a horse, a weapon, or disguise, or concealment of the offender, to enable the principal to escape, or evade arrest and trial, after the commission of the crime.

**4.—Evidence—Self-Serving Declarations.**

The declaration of defendant upon being informed that he was accused of forging a check, to the effect that he had been authorized to sign the check and draw the money, made several hours after the check had been cashed, is purely hearsay and self-serving and not admissible in evidence.

**5.—Evidence—Opinion of Witness Not Evidence.**

The belief of a witness as to the character of the charge against the defendant, that it amounted to nothing, and if he would testify in another case, that witness would go on his bond and help employ counsel for him, etc., was inadmissible in evidence; a want of belief of witness in the guilt of defendant can not be shown.

**6.—Charge of the Court—Favorable to Defendant.**

A charge not calculated to injure the rights of defendant does not constitute reversible error, and there was no error in a charge which instructed the jury to acquit the defendant in the event he had had a certain conversation with the party alleged to have been defrauded and that he had no intent to defraud him in making the check.

Appeal from the District Court of Gonzales. Tried below before Hon. M. Kennon.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penetentiary.

The testimony of the State was that defendant had made a check for $175 on a Gonzales bank, owned by G. N. Dilworth; that he had signed the name of G. H. King thereto and made the same payable to himself or bearer. When he presented the check at the bank for payment, he was asked whether King had signed it, and he answered that he did; that King was sitting in the buggy when he signed it; whereupon the check was paid and defendant left the town of Gonzales and went to his father's farm, where afterwards he was met by his father, who told him to return the money, and same was returned to Dilworth the next morning.

The State further proved by King that defendant owed him something like $200, and on the evening of the 4th day of October, 1902, shortly before the cashing of the check, had told King that he would pay part of his debt in corn; that King had never authorized defendant to sign his name to a check, or to draw on him and also denied that he had agreed to take back the mules and the horse for which defendant owed him.

Defendant went on the stand and testified that on the afternoon of October 4, 1902, and before he drew the said check, he met King, and that they had had a conversation as to the different amounts he owed King, and that King had agreed to take back some mules and a horse which defendant had bought from him and for which he owed him and thus settle his indebtedness to King, and that besides this, King had agreed to take defendant's corn crop at current prices and pay him ·in cash, and had authorized defendant to draw on Dilworth's bank for it; that his corn crop consisted of about 400 bushels. That after said conversation defendant went to the courthouse, drew the check and got the money on it at Dilworth's bank. That neither Dilworth, nor anyone else ever asked him whether King signed the check, and that he never told anyone that King signed the check sitting in the buggy, but that Dilworth asked defendant where King was and that defendant said he was sitting in his buggy. He further testified that he believed he was authorized by King from the conversation he had with him to sign the check.

The State's witnesses denied that they had promised defendant and his father that they would not prosecute defendant if the money was promptly returned, but testified that defendant's father proposed that the money should be returned and asked them to say nothing about the transaction. Defendant's father, however, insisted that Dilworth and King did make such promise and had called him into the bank and had made him the proposition.

The court permitted this evidence for the purpose of impeachment and not to show that Dilworth and King were accessories after the fact.

*S. H. Hopkins, B. R. Abernathy,* and *J. W. Rainbolt,* for appellant.— Where parties, after the commission of an alleged offense, agree for a consideration to conceal such offense and not prosecute the defendant, they become in law accomplices, and any fact which proves or tends to prove that such parties, for a consideration, agree to conceal such alleged offense and not prosecute defendant, is admissible to prove such parties so agreeing, are accomplices.

As to whether a witness is in law an accomplice, is a question to be proved by testimony, and any and all parts of any conversation or agreement which prove or tend to prove the allegation is admissible not only for the purpose of impeachment, but as original testimony to show that such witness or witnesses are accomplices. Blakely v. State, 24 Texas Crim. App., 616; Walker v. State, 37 S. W. Rep., 423; Gatlin v. State, 40 Texas Crim. Rep., 116.

*Howard Martin,* Assistant Attorney-General, and *Davidson & Bailey,* for the State.—The contention that King was an accomplice is not well taken. Nor is the contention of appellant that the alleged agreement of King, Dilworth and Chenault, that if appellant's father would bring the money back the crime would be concealed, make him an accomplice. Shackey v. State, 41 Texas Crim. Rep., 255; Miller v. State, 7 Texas Ct. Rep., 323; Grimsinger v. State, 5 Texas Ct. Rep., 628. And especially is this true because there was no consideration for the agreement so far as King was concerned. The witness King had lost nothing by reason of the forged check, but on the contrary the witness Dilworth had.

BROOKS, JUDGE.—Appellant was convicted of forgery, and his punishment assessed at confinement in the penitentiary for a term of two years.

Bill of exceptions number 3 shows that while G. H. King, prosecuting witness, was on the stand, defendant, on cross-examination, offered to prove that immediately after he learned that the check mentioned in the indictment had been cashed by defendant at the bank of G. N. Dilworth, that witness and Dilworth met C. P. Chenault, father of appellant, and asked him to go with them to Dilworth's bank; that at the bank, on the evening the check was cashed, they told C. P. Chenault they (meaning witness and Dilworth) only wanted the money received by defendant on the check back; that they did not wish to harm defendant or his father; that if C. P. Chenault would bring back the money so received by defendant there would be no prosecution of defendant, but that witness and Dilworth would keep the matter secret, and that nothing would be said about it; that this agreement was made and entered into then and there between witnesses Dilworth and Chenault; and further acting upon said agreement, said Chenault did return to Dilworth the sum of $175 on the next morning. To all of this testimony the State

objected, and the court sustained the objections. The bill is approved with the statement that at this time said G. N. Dilworth had not testified.

Bill of exceptions number 4 complains that while prosecuting witness G. H. King and G. N. Dilworth were on the stand, and had testified in behalf of the State, appellant attempted to show by said witnessess that on the afternoon of October 4, 1903, after defendant had cashed the check at Dilworth's bank, said witnessess hunted up appellant's father and induced him to go to Dilworth's bank in the town of Gonzales, and there had a conversation with said Chenault, in which witnesses informed him of the execution and cashing of the check defendant is charged to have forged; and offered and agreed with said Chenault, if he (Chenault) would see defendant and return to Dilworth the money he had received on the check, to wit, $175, these witnesses would conceal the transaction, say nothing about it, and in that event would never be prosecuted, but the matter would blow over without prosecution against defendant. Defendant announced to the court that if permitted to inquire fully into the transaction he expected to prove by said witnesses that for a consideration they had entered into an agreement to conceal the alleged offense of defendant and prevent his trial and prosecution; and from their own testimony expected to show said witnesses were accessories after the fact to the crime under investigation. Whereupon the district attorney objected, and the court refused to permit said witnesses to testify; and only permitted appellant to ask specific leading questions to said witnesses for the purpose, as announced by the court, of impeaching said witnesses; said questions to be confined to whether or not certain statements had been made by said witnesses to said Chenault. This bill is approved with the following explanation: "That the fact of the meeting at Dilworth's bank was permitted to be shown, and the specific questions set out in the bill were permitted to be asked and answered; but the court held that it was not permissible to ask the witnesses to state what the conversation was generally."

Article 86 Penal Code, provides: "An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial, or the executions of his sentence." The proffered evidence, as disclosed by the two bills above, is insisted by appellant as being pertinent evidence in this case, upon the theory that the same would prove that the witnesses were accessories to the forger. We hold that said testimony is not admissible for this purpose. No one in this State can be an accessory after the fact, such as disqualifies him as a witness, unless he comes within the letter and spirit of the article above quoted; that is, he must give some aid and assistance to the principal before he can be guilty. In other words, he must conceal the offender or give him some other aid in order that he may evade an arrest or trial. The aid here contemplated is such as furnishing him with a horse to flee upon; or giving him a gun with the view of resisting arrest for the offense, or some other overt

active assistance. The evidence going to disqualify a witness must be of sufficient force to convict him of accessory to the crime before such witness would be an accessory. In Shackey v. State, 41 Texas Crim. Rep., 255, quoting from Mr. Bishop, we said: "That the test of an accessory after the fact is that he renders his principal some personal help to elude punishment—the kind of help being unimportant. Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory, though it is punishable as a misdemeanor." And further, "That we learn from the elucidations of the first volume (of the same author) that an accessory after the fact in felony is one who in any way aids the principal offender, whom he knows to be guilty of the felony to elude punishment." "One is not an accessory who merely neglects to make known to the officers that a felony has been committed, or who forbears to arrest the felon or agrees not to prosecute him. Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory. 1 Bishop Crim. Law, sec. 694. Nor does the fact that one agrees for money not to give evidence against a felon, or knows of the felony and does not disclose it, make the party an accessory after the fact. There must be some independent criminality to make one an accessory. By independent criminality as here stated, we understand is meant such aid as suggested above; such as furnishing a horse, a weapon, or disguise to enable the party to escape after the commission of the crime. But the doing of the things above stated do not make one an accessory." Miller v. State, 7 Texas Ct. Rep., 324. Appellant's contention that the court erred in not admitting this testimony seems to be predicated on the idea that if said witnesses made the agreements with appellant's father, then said witnesses would be thereby compounding a felony, and having compounded a felony would make them accessories to the forgery here on trial. This proposition was laid down by this court in Gatlin v. State, 49 S. W. Rep., 87; 40 Texas Crim. Rep., 116. But we take it that said decision is at variance with the above cited cases, and is not sound in principle. The fact that one compounds a felony does not make such party an accessory to the felony compounded. It follows, therefore, that the court did not err in excluding this testimony.

Bill of exceptions number 6 shows that defendant offered to prove by C. P. Chenault, father of defendant, that immediately after he was informed defendant had cashed the check mentioned in the indictment, at Dilworth's bank, he sought defendant, and being the first time he was called on to account for his possession of the money received on said check, informed defendant that G. H. King had said that defendant had no right to sign his name to the check, and had no right to get money on the same; that defendant then and there informed his father that he had sold King his corn, and that King had told him to begin hauling the corn on the following Monday morning, and draw on him (King) for the money through G. N. Dilworth's bank; that defendant thought he

was authorized to draw the money on the corn he had sold to King. The State objected to this testimony on the ground that the same was inadmissible, self-serving, hearsay, and not a part of the res gestae. The bill is approved with the qualification: "That the conversation referred to occurred between two and three hours after the check was cashed, and at defendant's home, about seven miles from Gonzales." Appellant insists that this testimony is admissible under article 791, Code of Criminal Procedure: "When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other." However, we do not think this testimony comes within said rule. The declaration of appellant upon being informed, as stated above, by his father, is purely hearsay and self-serving. He can not be heard to manufacture a defense of this character. We accordingly hold that the court did not err in excluding the conversation.

There are various other bills of exception in the record presenting practically the same questions discussed, but we do not deem it necessary to review them.

Bill of exceptions number 12 complains that the court excluded the following testimony, at the instance of the State: While G. H. King was on the stand, defendant asked him the following question: "Is it true that, in the fall of 1902, on the streets of Gonzales, you voluntarily stated to Ed Cavitt, while Whit Chenault was away, and before he had returned, that you cared nothing about the forgery case (meaning the case at bar), that it didn't amount to anything, that if Whit would return and show up in the Mexican murder case, there was not a man in the county that would do more for him in the forgery case; that you would go his bond, and help to hire a lawyer for him, if necessary?" This testimony was merely the opinion of the witness and could not be introduced for defendant. Certainly if the witness had expressed the converse opinion, that is, an opinion indicating the guilt of appellant to a third party, the State could not have proved this; and it necessarily follows that the converse is true. Where he makes a declaration indicating a want of belief in the guilt of defendant, this could not be proved.

Appellant complains of the eighth paragraph of the court's charge, which is as follows: "If you believe from the evidence that defendant and said King had, in substance, the conversation above set out, and that defendant made the check in question for the purpose of paying himself for the corn he had agreed to sell King (if you find he did so agree) then you are to consider in this connection whether, in making the check, defendant did so with intent to injure and defraud; and if you fail to find from the evidence, beyond a reasonable doubt, that defendant made the check with intent to injure and defraud, you will acquit him." Appellant excepts to said charge on the ground that the same is upon the weight of the evidence, is contradictory to and in modification of the first paragraph of said charge; that the same tended to confuse the minds of the jury and lead them to believe that even

though the conversation had occurred between King and defendant, as narrated by defendant, defendant might be convicted under the circumstances. We do not think the charge subject to the criticisms urged by appellant, or at least it was not calculated to injure the rights of appellant.

There appearing no error in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]