[No. 2202]

## IN THE MATTER OF THE APPLICATION OF FREDERICK OVERFIELD FOR A WRIT OF HABEAS CORPUS.

[152 Pac. 568]

1. HABEAS CORPUS—EXTRADITION—EXTENT OF REVIEW.
   In hearing an application for *habeas corpus* seeking the petitioner's release from the custody of an agent of another state requisitioning the petitioner as a criminal, the court will go behind the executive warrant of such other state and inquire into the sufficiency of the papers constituting the requisition.

2. CRIMINAL LAW—PARTIES TO OFFENSES—ACCESSORY AFTER FACT—STATUTE—"HARBOR AND PROTECT."
   Under Pen. Code Utah, sec. 4075, providing that persons who, after full knowledge that a felony has been committed, conceal it from the magistrate, or harbor or protect the person charged therewith or convicted thereof, are accessories, where petitioner for *habeas corpus*, after a third person in Utah procured certain bonds from another by false pretenses, induced the defrauded person to delay the institution of criminal proceedings against the third person for a few days, during which the latter left the State of Utah, petitioner was not an accessory after the fact to the crime, since the words "harbor and protect" of the statute imply more than mere withholding of knowledge as to the whereabouts of the party charged, and necessarily contemplate some affirmative act or acts of concealment or assistance rendered to the principal personally; mere words of inducement or persuasion intended to cause a third party to delay filing a criminal charge not being enough to bring the party within the statute.

3. CRIMINAL LAW—PARTIES TO OFFENSE—ACCESSORY AFTER FACT.
   The act of the petitioner in leaving Utah himself with the stolen bonds on his person did not render him an accessory after the fact to the crime of obtaining property by false pretenses.

4. HABEAS CORPUS—VOLUNTARY SURRENDER TO SHERIFF—EXTRADITION.
   A petitioner for *habeas corpus* could surrender himself to a sheriff of a county of the state in order to protect himself from being summarily removed from the state on the requisition of the governor of another state by an agent of such other state without opportunity to appeal to the courts for review of the matters of law pertaining to the extradition, the agent of the other state to petitioner's knowledge having the intent so to remove him; therefore such petitioner was properly in the custody of the sheriff.

APPLICATION of Frederick Overfield for writ of *habeas corpus* to secure his release from the custody of the

sheriff of Washoe County and from that of an agent of the State of Utah.　**Petitioner discharged.**

*M. B. Moore,* for Petitioner:

The governor of one state has no authority to issue a warrant directing the deportation of a person except upon presentation of a state of facts constituting an offense under the laws of the demanding state.

Three things are necessary to constitute and complete the offense charged against the petitioner. (1) The felony must have been committed. (Wharton's Crim. Law, 10th ed. vol. 1, sec. 242; *Reynolds* v. *People,* 83 Ill. 479; *Welsh* v. *State,* 3 Tex. App. 413.) (2) Defendant must know that the felon is guilty. (Wharton's Crim. Law, *supra.*) (3) The felon must be, to some extent, sheltered from pursuit by the defendant. (*Loyd* v. *State,* 42 Ga. 221; *Wren* v. *Commonwealth,* 26 Gratt. 952; 12 Cyc. 192.)

A person cannot be prosecuted for an act of omission. (*Wren* v. *Commonwealth, supra.*) Where a statute makes it a crime to knowingly harbor a criminal, there must be knowledge of the commission of the offense and an intent to shield from the law. (*State* v. *Davis,* 14 R. I. 281.) Receiving stolen property, knowing it to be stolen, does not, in the absence of statute, constitute the receiver an accessory to the crime of larceny. (4 Black. Comm. 38; *Loyd* v. *State, supra; Street* v. *State,* 39 Tex. App. 134, 45 S. W. 577.)

*Edward F. Lunsford,* District Attorney, for Respondent:

Where a person voluntarily submits himself to arrest for the purpose of invoking the writ of *habeas corpus,* the court will not hear the proceedings. (21 Cyc. 290; 25 Cent. Dig., sec. 12; *In Re Gow,* 139 Cal. 242; *In Re Bailey,* 11 Pac. 672.)

Petitioner was an accessory after the fact, as described in the complaint upon which the requisition is based. (12 Cyc. 192.) The technical sufficiency of the indictment or information in the demanding state is not material. (21 Cyc. 328; *In Re Van Sciever,* 47 Am. St. Rep. 730; *Pearce* v. *Texas,* 155 U. S. 311.)

By the Court, McCARRAN, J.:

This is an original proceeding in *habeas corpus*, in which the petitioner, Frederick Overfield, seeks to secure his release by order of this court from the custody of the sheriff of Washoe County, and also from the custody of one Victor Christopherson, the duly authorized agent of the State of Utah.

It appears from the petition that while petitioner was on his way to San Francisco he stopped over in the city of Reno to visit friends, and was there arrested by the sheriff of Washoe County, and has since been arrested and detained by said officer as a fugitive from justice. There are before us the requisition papers issued by the governor of the State of Utah, as well as the executive warrant issued by his excellency the governor of Nevada.

**1.** It has long since been established as a rule of this court that on matters of this kind the court would go behind the executive warrant and inquire into the sufficiency of the papers constituting the requisition issued out of the demanding state.

**2.** Petitioner in this case attacks the complaint on which and by reason of which he is sought to be returned to the State of Utah. The instrument, in substance, is as follows:

"On this 23d day of October, A. D. 1915, before me, L. R. Martineau, Jr., justice of the peace within and for Salt Lake City precinct, Salt Lake County, State of Utah, personally appeared Elmer L. Blake, who, on being duly sworn by me, on his oath did say that Frederick Overfield, on the 15th, 16th, and 17th days of October, A. D. 1915, at the County of Salt Lake, State of Utah, did commit the crime of being an accessory to the crime of obtaining property by false pretenses, as follows, to wit: That upon the 9th day of October, 1915, one Mark L. Kilbourne, at the County of Salt Lake, State of Utah, wilfully, unlawfully, knowingly, designedly, and with intent to cheat and defraud the International Consolidated Oil Company of Wyoming, a corporation, of its personal property hereinafter described, did falsely and fraudulently pretend and represent to Elmer L. Blake, who was then and there the

fiscal agent of said corporation, that he, the said Mark L. Kilbourne, had secured as a purchaser of bonds of the International Consolidated Oil Company of Wyoming, of the value of $2,000, one Mr. Arlison, of the Judge Building, Salt Lake City and County, State of Utah; and the said Elmer L. Blake, then and there believing the false pretense and representation so made as aforesaid by the said Mark L. Kilbourne to be true, and then and there being deceived thereby, was then and there induced, as said fiscal agent of the said International Consolidated Oil Company of Wyoming, to part with and deliver to the said Mark L. Kilbourne, and he did then and there part with and deliver to the said Mark L. Kilbourne bonds of the International Consolidated Oil Company of Wyoming of the value of $2,000, lawful money of the United States of America, the personal property of the said International Consolidated Oil Company of Wyoming; and the said Mark L. Kilbourne did then and there wilfully, unlawfully, knowingly, and designedly receive and obtain the said bonds of the said International Consolidated Oil Company of Wyoming from the said Elmer L. Blake by means of the false pretense and representation so made as aforesaid, and with intent then and there to cheat and defraud the said International Consolidated Oil Company of Wyoming of the said bonds, whereas, in truth and in fact, the said Mark L. Kilbourne had not, and he well knew that he had not, at the time and place aforesaid, secured as a purchaser for said bonds as aforesaid one Mr. Arlison, of the Judge Building, Salt Lake County, State of Utah; and the said Elmer L. Blake, as fiscal agent of the International Consolidated Oil Company of Wyoming, would not, as aforesaid, have parted with the said property, except upon the representation so made to him as aforesaid by the said Mark L. Kilbourne, and that afterwards, on the 15th, 16th, and 17th days of October, 1915, at the County of Salt Lake and State of Utah, as aforesaid, the said defendant, Frederick Overfield, well knowing the said Mark L. Kilbourne to have done and committed the said crime of obtaining property under false pretenses

in the manner and form aforesaid, and the said Frederick Overfield then and there having in his possession said bonds of the International Consolidated Oil Company of Wyoming of the value of $2,000, did then and there wilfully, unlawfully, and feloniously protect the said Mark L. Kilbourne in the manner as follows: That the said Frederick Overfield, upon the said 15th, 16th, and 17th days of October, 1915, at the place aforesaid, did persuade and induce the aforesaid Elmer L. Blake to agree to delay the institution of criminal proceedings against the aforesaid Mark L. Kilbourne until 9 o'clock a. m. on the 18th day of October, A. D. 1915; and the said Elmer L. Blake, actuated by said persuasions, inducements, and agreement, did delay the institution of criminal proceedings against the aforesaid Mark L. Kilbourne until 9 o'clock a. m. on the 18th day of October, 1915; and, by virtue of said delay so caused as aforesaid, the aforesaid Mark L. Kilbourne did, on one of the days aforesaid, to wit, the 15th, 16th, and 17th days of October, 1915, depart from the State of Utah, and the said Frederick Overfield well knew that, by virtue of said delay so caused as aforesaid, the aforesaid Mark L. Kilbourne did depart from the State of Utah; and the said Frederick Overfield did, by virtue of said delay so caused as aforesaid, himself, upon the 17th day of October, 1915, depart from the State of Utah and take with him in his possession the aforesaid bonds of the International Consolidated Oil Company of Wyoming of the value of $2,000."

By this complaint the authorities of the State of Utah seek to charge the petitioner here as being an accessory after the fact to the crime of obtaining property by false pretenses.

The Penal Code of the State of Utah (section 4075) is as follows:

"All persons who, after full knowledge that a felony has been committed, conceal it from the magistrate, or harbor and protect the person charged therewith or convicted thereof, are accessories."

It is the contention of counsel for respondent herein

that the acts set forth in the complaint as having been done by petitioner, to wit, the act of persuading and inducing Elmer L. Blake to delay the institution of criminal proceedings against Mark L. Kilbourne, the principal in the commission of the crime of obtaining property by false pretenses, made the petitioner an accessory after the fact.

In the statute of Utah as above set forth it will be observed that there are two elements, the wilful violation of either of which will make the violator an accessory after the fact. The one is the act of concealing from a magistrate knowledge that a felony has been committed. The other is harboring and protecting the person charged therewith or convicted thereof. It will be noted that the words "harbor and protect" are used in the conjunctive, and not in the disjunctive. It will be further noted that it must be a person charged with the commission of a felony.

The allegations of the complaint, if taken for the purposes of this proceeding to be true, and the words thereof are given their full legal force and significance, set forth acts and utterances on the part of the petitioner having the significance of persuasion and tending to induce a prosecuting witness from preferring charges against one known to have committed a felony. Assuming all of the allegations of the complaint in this respect to be true, does the complaint, in the light of the statute of Utah, actually charge any offense known to the laws of that state?

An examination of the authorities, both at common law and under the codes of the several states, discloses an almost universal holding that, in order to make one an accessory after the fact to a felony, the party charged must have performed some act to assist the principal felon personally.

In an early English case this principle was asserted, and it was held that writing letters to intimidate witnesses and prevent them from coming forward to give evidence was not a harboring and assisting of a felon. (*Regina*

v. *Chapple,* 9 Carr & Payne R. 355, 38 Eng. Com. Law Rep. 212.)

In Clark on Criminal Law it is asserted that merely suffering a felon to escape by taking no steps to detain him or to notify the authorities does not make one an accessory. "It is essential," the author says, "that the assistance shall be rendered to the felon personally." (Clark's Criminal Law, 2d ed. p. 114.)

In 1 Bishop's New Criminal Law, p. 422, sec. 695, subd. 2, the author asserts:

"He is an accessory who, with the requisite knowledge and intent, furnishes the principal felon 'with a horse to escape his pursuers, money or victuals to support him, a house or other shelter to conceal him, or open force and violence to rescue or protect him. So likewise to convey instruments to a felon to enable him to break jail, or to bribe the jailer to let him escape, makes a man an accessory to the felony.' But keeping a witness, by persuasion or intimidation, from appearing against a felon on his trial, does not render one the felon's accessory, though it is punishable as misdemeanor."

These texts are referred to approvingly by the Court of Criminal Appeals of Texas in the case of *Schackey* v. *State,* 41 Tex. Cr. R. 255, 53 S. W. 877. In the latter case it is held that the relation of accessory is a personal one to the offender to whom the aid is given, and is only found in the fact that assistance is rendered to the particular offense.

In the case of *Wren* v. *Commonwealth,* 26 Grat. (Va.) 952, the court said:

"But merely suffering the principal to escape will not make the party accessory after the fact; for it amounts, at most, but to a mere omission. * * * Or, if he agree for money not to prosecute the felon, or if, knowing of a felony, fails to make it known to the proper authorities, none of these acts would be sufficient to make the party an accessory after the fact."

The case of *Wren* v. *Commonwealth, supra,* was referred to approvingly in the case of *State* v. *Doty,* by the Supreme

Court of Kansas; and that tribunal, in the latter case, held that the mere fact that a person induced or persuaded another to tell a falsehood with reference to the actual perpetrator of a felony would not make the party so advising an accessory to the crime. (*State* v. *Doty*, 57 Kan. 835, 48 Pac. 145; *Chenault* v. *State*, 46 Tex. Cr. R. 351, 81 S. W. 971; *State* v. *Jett*, 69 Kan. 788, 77 Pac. 546; *Loyd* v. *State*, 42 Ga. 221.)

The Supreme Court of California, in passing upon the statute of that state identical to the one under consideration here, wherein an accessory after the fact is defined, said:

"The aforesaid section is not as plain and explicit as it might be by any means. At the same time the word 'conceal,' as here used, means more than a simple withholding of knowledge possessed by a party that a felony has been committed. This concealment necessarily includes the element of some affirmative act upon the part of the person tending to or looking toward the concealment of the commission of the felony. Mere silence after knowledge of its commission is not sufficient to constitute the party an accessory." (*People* v. *Garnett*, 129 Cal. 365, 61 Pac. 1114.)

See, also, *Ex Parte Goldman*, 7 Cal. Unrep. Cas. 254, 88 Pac. 819.

This rule, which we deem applicable to the matter at bar, has been approved by the leading cases upon this subject. (1 Ruling Case Law, pp. 148, 149.)

The act of a person having knowledge of facts concerning the commission of an offense in falsifying concerning his knowledge will ordinarily not render him an accessory after the fact. (Ruling Case Law, *supra; Levering* v. *Commonwealth*, 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 145, and note.)

As asserted by the Supreme Court of California in the case of *State* v. *Garnett, supra,* so in this case it appears to us necessary that the words "harbor and protect" imply more than mere withholding of knowledge as to the whereabouts of the party charged, and must necessarily

contemplate the element of some affirmative act or acts of concealment or assistance rendered to the principal personally. Mere words of inducement or persuasion intended to cause a third person to delay the filing of a criminal charge are not enough to bring the party so doing within the scope of the statute.

**3.** Nor would the allegations in the complaint that petitioner had on his person the stolen property be sufficient to charge him with being an accessory after the fact of the crime of obtaining property by false pretenses. (1 Hale, P. C. 620; *Loyd* v. *State, supra; Street* v. *State,* 39 Tex. Cr. R. 134, 45 S. W. 577; 12 Cyc. 193; 1 Ruling Case Law, 149.)

**4.** As to the other matter raised by respondent wherein it is asserted that petitioner herein was not properly in custody at the time of the issuance of this writ, it is our judgment that, in view of the fact that the executive warrant had been previously issued by the governor of this state and was in the hands of authorized officers, the petitioner, in order to protect himself from being summarily removed from the state without opportunity to appeal to the courts for a review of the matters of law pertaining to his extradition, was warranted in delivering himself to the sheriff of Washoe County.

The authorized agent of the State of Utah, being interrogated, testified under oath that it was his intention to remove this applicant from the State of Nevada before he could have access to the courts. This attitude on the part of the agent of the State of Utah, being known to petitioner, was sufficient, in our judgment, to warrant him in taking every legal step which the law afforded for the enforcement of his legal rights. The attitude of the agent of the State of Utah in this respect is neither called for as a duty nor contemplated in the spirit of the law.

The complaint on which the executive warrant of the governor of Nevada issued failing, as it does, to state facts sufficient to constitute a public offense against the

laws of Utah, petitioner should be released from custody and restored to his liberty.

It is so ordered.

NORCROSS, C. J.: I concur.

COLEMAN, J., concurring:

I concur in the order of discharge upon the ground that the facts stated in the complaint, set out in the opinion of the court, do not constitute a crime under the laws of Utah. I think the true test of what constitutes an accessory after the facts is laid down by the Supreme Court of Georgia in *Loyd et al.* v. *State*, 42 Ga. at p. 225, where it is said:

"* * * We lay down the true test to be to consider whether what he did was done by way of personal · help to his principal, with a view to enable the principal to elude punishment; and it is unimportant as to what assistance was rendered, provided it was done with a view to aid the principal to elude or escape punishment."

If the information set out in the petition had alleged that petitioner persuaded and induced Blake to delay the institution of criminal proceedings for the purpose and with the view and intent of affording Kilbourne an opportunity to depart from the state to avoid criminal prosecution, it might be that a crime would have been charged under the laws of the demanding state.