El Pueblo de Puerto Rico, demandante y apelante, *v.* Ernesto López Ballester, Manuel Rey González y Ernesto Vázquez Torres, acusados y apelados.

Núm. 7809.—*Sometido:* Diciembre 19, 1939. *Resuelto:* Marzo 13, 1940.

*Hon. Procurador General George A. Malcolm (B. Fernández García
en el alegato y en la vista) E. Díaz Viera, Fiscal Especial del Dis-
trito de San Juan, R. A. Gómez, Fiscal del Tribunal Supremo, y
Luis Janer, Fiscal Auxiliar, abogados de El Pueblo, apelante;
Carlos H. Juliá, abogado de los apelados.*

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del
tribunal.

El presente recurso ha sido interpuesto por El Pueblo de
Puerto Rico contra la sentencia de la Corte de Distrito de
San Juan declarando con lugar la excepción perentoria for-
mulada por los acusados, al efecto de que los hechos alega-
dos en la acusación no constituyen delito público.

En la acusación se imputó a los acusados una infrac-
ción del artículo 37 del Código Penal, cometida de la manera
siguiente:

"Los referidos acusados, Ernesto López Ballester, Manuel Rey
González y Ernesto Vázquez Torres, allá por uno de los días del mes
de noviembre y diciembre de 1938 y en las municipalidades de San
Juan y Río Piedras, Puerto Rico, que forman parte del Distrito Ju-
dicial de San Juan, Puerto Rico, allí y entonces, ilegal, voluntaria,
criminal y maliciosamente y a sabiendas de que un delito grave de
falsificación (*felony*) se había cometido allá por el 15 ó 16 de agosto
de 1938 en San Juan, Puerto Rico, por una persona cuyo nombre real
se desconoce por lo que se le designa ahora con el nombre de John
Doe y en ocasión en que el referido John Doe con la intención de de-
fraudar al Pueblo de Puerto Rico, que es un Cuerpo Político, en la
cantidad de $62.67 moneda legal de curso de los Estados Unidos, fal-
sificó y falsamente hizo la firma de Martín Hernández, beneficiario
de un cheque número 19,497 librado por el referido 'Pueblo de Puerto

Rico' contra el National City Bank of New York de San Juan, y a favor del referido Martín Hernández, y cambió dicho cheque así falsificado, y lo pasó como genuino, y cobró su importe de $62.67 en la Oficina del Telégrafo Insular, en San Juan, Puerto Rico, y en esa cantidad defraudó al Pueblo de Puerto Rico; los ahora acusados, Ernesto López Ballester, Manuel Rey González y Ernesto Vázquez Torres, sabiendo que se había cometido un crimen (*felony*), un delito grave de falsedad y después de tener completo conocimiento, de que dicho delito grave de falsedad y falsificación se había cometido, lo ocultaron de las autoridades respectivas, y especialmente de Mr. Chester ·E. Rakestraw, Regional Agent in Trade and Industries for the Federal Division of Vocational Education, quien con otro agente federal investigaba desde el 1 al 14 de diciembre de 1938 el Board Insular de Educación Vocacional, para la promoción de Educación Vocacional en Puerto Rico; y también lo ocultaron del Subprocurador General Auxiliar, Lic. C. Andréu Ribas, Fiscal Especial nombrado por el Procurador General de Puerto Rico, para investigar dicho crimen o delito grave de falsificación y falsedad que se había cometido, y de las autoridades respectivas del Distrito Judicial de San Juan, y para este fin y objeto actuaron los referidos acusados de la siguiente manera, a saber: llevaron una carta antedatada y falsa a Martín Hernández y obtuvieron de éste que la firmara haciendo constar que había recibido el referido cheque, y le aconsejaron que testificara que había recibido el referido cheque de $62.67 y que lo había cambiado y que había devuelto el importe del mismo, y obtuvieron de éste que declarara que había recibido el cheque referido y lo había cambiado y cons'guieron que Martín Hernández firmara dicha carta a los fines de 'favorecer un amigo', y radicaron dicha carta en las oficinas del Departamento de Instrucción de Puerto Rico en la División de Instrucción Vocacional, y devolvieron el importe de dicho cheque al Tesorero de Puerto Rico tres meses y medio después de haberse cometido dicho delito o crimen (*felony*) de falsedad y falsificación y lo ocultaron de dichas autoridades respectivas con completo conocimiento de que tal crimen (*felony*) se había cometido, actos que realizaron los acusados para ocultar dicho crimen (*felony*) de los autoridades respectivas.''

El artículo 37 del Código Penal vigente, dice:

''Todas las personas que, sabiendo que se ha cometido un crimen '*felony*', lo ocultaren de las autoridades respectivas, o albergaren y protegieren a la persona acusada o convicta de su comisión, son cómplices de dicho crimen.''

Como se ve, existen dos modalidades distintas del delito que define el artículo 37, supra. Los elementos esenciales de la primera son: (*a*) la comisión de un delito grave (*felony*); (*b*) conocimiento de la persona acusada de complicidad de que tal *felony* había sido cometido; y (*c*) actos realizados por el alegado cómplice para ocultar el delito de las autoridades. Los dos primeros elementos de la segunda modalidad son idénticos a los de la primera. El tercero consiste en los actos realizados por el supuesto cómplice para albergar y proteger a un acusado o convicto de *felony*. Más brevemente dicho, en la primera modalidad el cómplice ha tratado de impedir que el crimen sea descubierto por las autoridades; y en la segunda, conocida ya la comisión del delito y acusada o convicta de él una persona determinada, el cómplice alberga y protege a esa persona para ponerla fuera del alcance de la justicia. En el primer caso se oculta el crimen; en el segundo se encubre al criminal.

■■ En la discusión de la única cuestión envuelta en este recurso—la suficiencia de la acusación—debemos hacer caso omiso de la segunda modalidad del artículo 37, supra. En la acusación no se imputa a los alegados cómplices la realización de acto alguno para albergar y proteger a John Doe, ni tampoco se dice que John Doe o persona otra alguna haya sido acusada o convicta del delito grave de falsificación. Convenimos con la corte inferior y con las numerosas autoridades citadas en su opinión, en que la acusación es a todas luces insuficiente para sostener un delito de complicidad comprendido dentro de la segunda modalidad.

¿Son los hechos alegados en la acusación suficientes, en caso de que sean sostenidos por la evidencia, para justificar una convicción dentro de la primera modalidad del artículo 37 del Código Penal? Ésa es la cuestión a resolver.

En la acusación que examinamos se alega:

1. Que el 15 ó 16 de agosto de 1938, en San Juan, una persona cuyo nombre se desconoce, y a quien se designa "John Doe," con intención de defraudar al Pueblo de Puerto Rico, en la suma de $62.67,

falsificó la firma de Martín Hernández, beneficiario del cheque núm. 19,497 librado por el Gobierno a favor de Hernández, cambió dicho cheque y cobró su importe, defraudando así al Pueblo de Puerto Rico.

2. Que a sabiendas de que se había cometido tal delito grave, los acusados lo ocultaron de las autoridades respectivas.

3. Que con el fin y objeto de ocultar dicho crimen, los acusados realizaron los siguiente actos:

(a) Llevaron a Martín Hernández y consiguieron que éste firmara una carta antedatada y falsa, en la que hacía constar que él había recibido el cheque.

(b) Aconsejaron a Martín Hernández que declarase que había recibido el cheque y que lo había cambiado y devuelto su importe.

(c) Consiguieron que Hernández declarara que había recibido el cheque, que lo cobró y que devolvió su importe.

(d) Radicaron la carta firmada por Hernández en las oficinas del Departamento de Instrucción de Puerto Rico, en la División de Instrucción Vocacional.

(e) Devolvieron el importe del cheque al Tesorero de Puerto Rico, tres meses y medio después de haberse cometido dicho delito de falsedad y falsificación.

Como se ve, la acusación imputa una infracción del artículo 37 del Código Penal, en su primera modalidad. No es necesario que en la acusación se alegue que otra persona ha sido acusada o convicta como principal, cuando se trata de una infracción de dicho artículo en su primera modalidad. Para sostener una acusación por infracción del citado artículo en su segunda modalidad, es absolutamente necesario alegar y probar que el autor principal ha sido acusado o convicto.

En el caso de *People* v. *Garnett,* 129 Cal. 364, 366, citado por los apelados y por la corte inferior, se imputó al acusado haber violado la sección 32 del Código Penal de California, cuya redacción es idéntica a la del artículo 37 del nuestro, en sus dos modalidades. En cuanto a la primera, se alegó en la acusación que una tal Lewis había cometido el delito de hurto de mayor cuantía, y que el acusado Garnett "después de tener pleno conocimiento de que dicho *felony* había sido cometido, según se ha expresado, voluntariamente allí y

entonces ocultó dicho *felony* al magistrado.'' En cuanto a la segunda modalidad, se alegó:

"Albergó y protegió a dicha Laura Lewis ayudándola y asistiéndola para que se escapara del Condado de Fresno, Estado de California, y albergando y ocultando a la dicha Lewis de los funcionarios y protegiéndola contra arresto y castigo por la comisión de dicho crimen, con la intención y propósito allí y entonces por parte de dicho Garnett de ocultar el crimen cometido por dicha Laura Lewis del magistrado, con pleno conocimiento en aquel momento de que dicha Laura Lewis había cometido dicho crimen en la forma ya expresada, y que dicho crimen es un *felony*.''

En apelación interpuesta por Garnett contra una sentencia condenatoria, la Corte Suprema de California la revocó y ordenó una nueva vista, basándose en la insuficiencia de las alegaciones de la acusación en cuanto a la segunda modalidad. Refiriéndose a la primera, o sea la ocultación de la comisión de un delito grave, la corte se expresó así:

"Dicha sección no es en modo alguno tan clara y tan explícita como podría serlo. Al mismo tiempo, la palabra 'ocultar' (*conceal*), según se usa aquí significa algo más que una simple retención del conocimiento poseído por una persona de que se ha cometido un *felony*. *Esta ocultación necesariamente incluye el elemento de algún acto afirmativo por parte de la persona, tendiente o con miras a la ocultatación de la comisión del delito. El mero silencio después del conocimiento de su comisión no es suficiente para convertir a dicha persona en un cómplice.''*

Y en cuanto a la segunda modalidad—albergar y proteger al acusado o convicto de *felony*—la corte de California dijo:

"Más aún, la palabra 'acusada' (*charged*), según se usa en la sección, significa una denuncia, información o acusación formal radicada contra el criminal, o posiblemente un arresto sin orden de prisión sería suficiente. Meros rumores y conversaciones sobre la comisión de un *felony* por una persona es enteramente insuficiente para llenar la medida requerida por la palabra 'acusada.'

''\*       \*       \*       \*       \*       \*       \*

"No encontramos alegación alguna en la acusación de que la Lewis haya sido acusada de *felony*. Por consiguiente, esa parte de la acu-

sación que imputa al acusado Garnett haberla albergado y protegido, no vale nada. Por razón de la falta de esa alegación, toda la evidencia tendiente a sostener esa parte de la acusación no debió ser presentada al jurado, *y el juicio debió celebrarse bajo la sola teoría de que el acusado ocultó al magistrado la comisión del delito*. Por el contrario, se presentó evidencia en cuanto a ambas partes de la acusación, y ambas fueron consideradas por el jurado. Este hecho está evidenciado por las instrucciones de la corte. Por esas razones el caso debe ser devuelto a la corte inferior para una nueva vista. Es imposible decir por el veredicto que el acusado no fué convicto como cómplice por el motivo de haber albergado y protegido a Trixie Lewis.''

Es evidente que la corte de California consideró que la alegación de que el acusado Garnett ''después de tener conocimiento de que dicho *felony* había sido cometido, según se ha expresado, voluntariamente allí y entonces ocultó dicho *felony* al magistrado,'' era suficiente para imputar al acusado una violación de la sección 32 del Código Penal de California, en su primera modalidad. De lo contrario hubiese revocado la sentencia y absuelto al acusado u ordenado la radicación de una nueva acusación. Al ordenar una nueva vista, la corte se ajustó a la doctrina por ella sentada en el caso de *People* v. *Mitchell*, 92 Cal. 590, en el que se resolvió que cuando en una acusación se imputa al acusado la comisión de un delito en dos distintas modalidades, el veredicto de *culpable del delito imputado en la acusación* no puede ser sostenido cuando la alegación de una de las dos modalidades del delito es fatalmente defectuosa. Mitchell fué acusado de haber falsificado un cheque y de haberlo usado y cobrado. La corte instruyó al jurado que podían declararlo culpable de una u otra cosa. La corte de apelación al revocar la sentencia y devolver el caso a la corte inferior, con instrucciones de permitir la radicación de una nueva acusación, se expresó así:

''. . . .; ahora, aun concediendo que uno solo de los elementos del delito era fatalmente defectuoso por razón de insuficiencia de la ale-

gación, en ese caso la sentencia debe ser revocada, porque es imposible decir, de acuerdo con las instrucciones de la corte y la evidencia presentada, que el jurado no basó su veredicto en aquella parte de la acusación que era absolutamente nula.''

El caso de autos no presenta las dificultades de los dos casos de California que hemos examinado. La acusación se refiere únicamente a la primera modalidad del artículo 37, supra. El fiscal no se limitó a alegar en el lenguaje del estatuto que los acusados, después de tener conocimiento de la comisión del delito grave de falsificación ''lo ocultaron de las autoridades respectivas.'' Fué más allá, y como si quisiera demostrar que no se trataba de un caso de mero silencio o inacción por parte de los acusados, alegó específicamente los *actos afirmativos* realizados por los acusados para encubrir el delito cometido. Esos actos afirmativos—llevar la carta falsa a Hernández y, conseguir que éste la firmara; aconsejar a Hernández que declarase falsamente y conseguir que así lo hiciera; radicar dicha carta falsa en el Departamento de Instrucción; y por último, devolver al Tesorero el importe del cheque—si fueren suficientemente probados, constituirían a nuestro juicio una violación del artículo 37 del Código Penal, y justificarían la convicción de los acusados como cómplices del delito de falsificación.

Arguyen los apelados, y así lo sostuvo la corte inferior, que ''tampering with witnesses,'' o sea influir a los testigos con el propósito de suprimir su testimonio contra el autor de un crimen, no convierte al que lo hace en cómplice. En apoyo de tal contención se han citado los casos de *People v. Dom Pedro,* 43 N.Y.S. 44; *Caylor v. State,* 68 S. W. 982; *State v. Doty,* 48 P. 145; *García v. State* (Tex.), 195 S. W. 196; *Farmer v. State,* (Okl.), 40 P. (2d) 693; y *Ex Parte Overfield,* 152 P. 568. Si se examinan cuidadosamente dichas decisiones se verá que todas ellas se refieren a casos en que en la acusación se imputaba al acusado haber ''albergado y protegido'' al autor de un delito.

En el primero de dichos casos, *People* v. *Dom Pedro*, supra, se resolvió:

"Una persona no puede ser declarada culpable como cómplice de un *felony* excepto mediante evidencia de que dió ayuda personal al criminal, con la intención de que pudiese escaparse físicamente; tal como esconderlo, sacarlo de la prisión, proporcionarle un caballo, y algo semejante. (Citas.) Haber tratado de conseguir que la parte querellante no lo identificase, o que se olvidase, o que no lo acusase o el haber sobornado testigos, o algo por el estilo, no constituye el delito."

En *Caylor* v. *State*, (Tex.), supra, se imputaba al acusado haber albergado y protegido al autor de una violación, para que se escapara. La evidencia tendió a demostrar que el acusado aconsejó a la madre de la ofendida que la hiciese salir del estado de manera que no pudiera ser testigo en contra del violador. El tribunal resolvió que eso no hacía al acusado cómplice de la violación, diciendo:

"Para convertir a uno en cómplice, debe haberse prestado alguna ayuda directa al autor del crimen. La evidencia ante nos no demuestra que ésos sean los hechos. Por lo tanto, sostenemos que la sentencia no está sostenida por la evidencia."

En *State* v. *Doty*, supra, después de definir la clase de ayuda a un criminal, que puede convertir a una persona en su cómplice, la corte se expresó así:

"Pero simplemente permitir que el criminal se escape no convierte a una persona en cómplice, porque a lo sumo eso equivale a una simple omisión . . .

"La acusada no prestó ayuda personal de esa clase, y el mero hecho de que ella pidiese a su hija que le dijera una mentira al fiscal con respecto a la paternidad del hijo ilegítimo, aun cuando sea reprensible, no constituye a nuestro juicio la ayuda que contempla el estatuto, ni equivale a un delito bajo el estatuto."

En *García* v. *State*, supra, al resolver que el mero hecho de transportar objetos robados no convertía al acusado en cómplice, la Corte Suprema de Texas dijo:

"Los actos que convertirían a uno en cómplice son aquéllos que son personales para con el criminal. Interpretando el artículo 86, supra,

esta corte, en el caso de *Street* v. *State,* 39 Tex. Cr. R. 136, 45 S. W. 578, dice:

" 'Interpretamos esto en el sentido de que, para ser culpable de este delito, la persona acusada debe dar alguna ayuda personal al criminal para que éste pueda evitar un arresto o el ser sometido a juicio por el delito cometido.' "  ·

La acusación en el caso de *Farmer* v. *State,* supra, fué formulada bajo el estatuto de Oklahoma, que hace cómplice solamente al que esconde o ayuda al criminal, sabiendo que ha cometido un *felony,* para que se escape. Lo único que se probó contra Farmer, acusado de complicidad en un delito de ataque para cometer homicidio, fué que, teniendo conocimiento de la comisión del alegado delito, dijo al *sheriff* una falsedad al decirle que no sabía quiénes eran los autores. La sentencia fué revocada, expresándose así la corte de apelaciones:

"El acusado fué, por lo tanto, convicto bajo la teoría de que al negarse a decir al *sheriff* los nombres de las personas que habían cometido el delito, él ayudó a los criminales a escapar y que dijo la mentira al *sheriff* con la intención de que los criminales pudiesen escaparse y evitar el arresto . . . Las decisiones son en sentido contrario y en efecto sostienen que para hacer a una persona cómplice es necesario que haya prestado alguna ayuda abierta y activa al criminal personalmente.

"No hay evidencia en el récord que demuestre que el acusado prestara alguna ayuda activa a la persona acusada de *felony.*"

Véanse: *Howard* v. *People,* 51 P. (2d) 594, y *Roberts* v. *People,* 87 P. (2d) 251.

El caso de *Ex parte Overfield,* 39 Nev. 30, 152 P. 568, tampoco es de aplicación al caso de autos, pues allí se trataba de una acusación por complicidad, consistente en "haber protegido" a un acusado de obtener dinero mediante falsas representaciones. Se alegó que Overfield había tratado de persuadir a la parte perjudicada para que no presentara una denuncia contra el que le había defraudado. Igualmente inaplicables consideramos los casos de *El Pueblo* v. *Paz,* 12 D.P.R. 100, y *El Pueblo* v. *Bermúdez,* 32 D.P.R. 376, pues

ambos se refieren a alegadas infracciones de la segunda modalidad del artículo 37 del Código Penal, por haber albergado y ayudado a un criminal.

La acusación alega a nuestro juicio todos los elementos esenciales del delito que se imputa a los acusados. Fué error de la corte inferior declarar con lugar la excepción perentoria. *Debe revocarse la sentencia y devolverse el caso a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Hutchison no intervino.