**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 10 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AMY JEWEL MCFARLAND,

Plaintiff-Appellee,

v.

No. 99-7023

J. REANAE CHILDERS, in her
individual capacity,

Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. CV-98-107-B)

---

Submitted on the briefs:[*]

Wellon P. Poe, Assistant Attorney General, State of Oklahoma, Oklahoma City,
Oklahoma, for Defendant-Appellant.

Gene V. Primomo, Delmar, New York, for Plaintiff-Appellee.

---

Before **ANDERSON**, **McKAY**, and **HENRY**, Circuit Judges

---

**HENRY**, Circuit Judge.

---

[*]On October 27, 1999, after examining the briefs and appellate record, this panel
granted the parties' joint motion for a decision on the briefs without oral argument. See
Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

The defendant J. Reanae Childers, an agent of the Oklahoma State Bureau of Investigation ("OSBI"), seeks to appeal the district court's denial of her motion for summary judgment on qualified immunity grounds. The district court ruled that Agent Childers was not entitled to qualified immunity on either of plaintiff Amy Jewel McFarland's claims: (1) that Agent Childers improperly detained her on October 25, 1996, thereby violating the Fourth Amendment; and (2) that Agent Childers violated the Fourth Amendment by executing probable cause affidavits wrongfully charging Ms. McFarland with being an accessory after the fact to first degree murder.

For the reasons set forth below, we conclude that we lack jurisdiction over Agent Childers's appeal of the denial of qualified immunity as to the wrongful detention claim. On the claim arising out of the execution of the probable cause affidavits, we conclude that Agent Childers is entitled to qualified immunity, and, therefore, reverse the decision of the district court.

## I. BACKGROUND

On October 25, 1996, law enforcement officials discovered Ms. McFarland's driver's license on the body of a murder victim in rural Atoka County, Oklahoma. The license listed a Coal County address. Agent Childers, who had been assigned to investigate the murder, contacted the Coal County Sheriff. She asked him to attempt to contact Ms. McFarland.

2

The sheriff and his deputy found Ms. McFarland at approximately 4:00 p.m. on October 25, 1996. They told her that she needed to go the sheriff's office because someone wanted to talk to her. They then transported Ms. McFarland there, and Agent Childers questioned her.

Agent Childers informed Ms. McFarland that she was not under arrest and asked if Ms. McFarland would voluntarily speak with her. Ms. McFarland agreed. She denied that she was present at the murder scene and said that the last time she had seen him, the victim had "walked off." See Aplt's App. at 429 (Dist. Ct. Order, filed Feb. 4, 1999).

In the district court proceedings, conflicting testimony was introduced as to whether Ms. McFarland was free to leave the sheriff's office after Agent Childers began to question her. Agent Childers testified that Ms. McFarland was repeatedly informed that she was not under arrest. See id. In contrast, Ms. McFarland stated that when she asked Agent Childers for permission to go home, Agent Childers told her "no," id., explaining that Ms. McFarland was a prime suspect in the murder and that she had to stay and answer her questions.

After approximately one hour, Agent Childers concluded her inquiries. The Atoka County Sheriff and an investigator from the Atoka County District Attorney's office continued the examination and eventually asked Ms. McFarland to submit to a polygraph. She agreed, and the officials took her to the OSBI office in Antlers, Oklahoma. After submitting to the polygraph, Ms. McFarland admitted that she had not been truthful

regarding her knowledge of the murder. She implicated two other individuals but said that she had not personally participated in the shooting.

Based on her deceptive responses, an investigator from the Atoka County District Attorney's Office and an OSBI agent placed Ms. McFarland under arrest. On the following day (October 26, 1996), Agent Childers executed a probable cause affidavit reporting Ms. McFarland's conflicting responses to the agents' interrogation. The affidavit stated that Ms. McFarland had aided the individuals who had committed the murder by giving untruthful answers to Agent Childers's questions, with the intent that these individuals avoid arrest and punishment. See id. at 337-38 (Probable Cause Affidavit, signed October 26, 1996). On October 28, 1996, the Atoka County District Attorney's Office filed an information charging Ms. McFarland with committing the crime of accessory after the fact, in violation of Okla. Stat. tit. 21, §§ 173, 175. See id. at 339-41. Based on Agent Childers's affidavit, an Atoka County judge found probable cause to detain Ms. Childers, and she was confined in the Atoka County jail.

In December 1996, the Atoka County court transferred the case to the District Court for Coal County, Oklahoma, and a similar series of events occurred in that jurisdiction: Agent Childers filed a second probable cause affidavit containing the same allegations against Ms. McFarland, the Coal County District Attorney filed an information alleging that Ms. McFarland had been an accessory after the fact, and a Coal County judge found probable cause to detain her.

4

In March 1997, the Coal County court conducted a preliminary hearing. The court again found probable cause for Ms. McFarland's arrest and bound her over for trial. Ms. McFarland then filed a motion to dismiss the accessory-after-the-fact charge, arguing that her initial denial of knowledge of a crime was insufficient to establish the crime of accessory after the fact under Oklahoma law. The Coal County District Court agreed. On September 15, 1997, it granted Ms. McFarland's motion to dismiss and released her from custody. It reasoned that Ms. McFarland "did nothing more than deny knowledge of the crime when questioned by law officers." Id. at 422 (Coal County Dist. Ct. Order, filed Sept. 15, 1997).

In March 1998, Ms. McFarland filed this action pursuant to 42 U.S.C. § 1983. She asserted two Fourth Amendment claims: (1) that Agent Childers wrongfully detained her on October 25, 1996; and (2) that, by executing the probable cause affidavits that did not allege a crime under Oklahoma law, Agent Childers caused Ms. McFarland to be wrongfully incarcerated for ten and a half months. After the parties conducted discovery, Agent Childers filed a motion for summary judgment on qualified immunity grounds.

In a February 4, 1999 order, the district court denied Agent Childers's motion. The court first rejected Agent Childers's contention that the doctrine of collateral estoppel precluded Ms. McFarland from challenging the probable cause findings made by the Atoka and Coal County district courts in October and December 1996. Citing this court's decision in Bell v. Dillard Department Stores, 85 F.3d 1451 (10th Cir. 1996), the district

5

court reasoned that, under Oklahoma law, the doctrine only applied if the party sought to be estopped had a full and fair opportunity to litigate the issue in question in a prior proceeding. "[I]n order for a party to have had an opportunity to fully and fairly litigate a matter, the party must be able to avail himself of the right to appeal." Aplt's App. at 436 (Dist. Ct. Order, filed Feb. 4, 1999). Here, Ms. McFarland did not have the right to appeal the two initial findings of probable cause.

The court then concluded that there was evidence in the record supporting Ms. McFarland's claim arising out of her October 25, 1996 detention. The court found the evidence in dispute as to whether the initial encounter with the Coal County Sheriff was consensual. It cited Ms. McFarland's testimony that she believed that she was being detained and noted the fact that Coal County sheriff was armed and in uniform when he took her to his office. The court also observed that Ms. McFarland had testified that, during the interrogation, she had requested to go home, but Agent Childers had not allowed her to do so. "This action, if it occurred, transforms the investigative detention into a full-blown arrest, without any basis for doing so at the time[,] given [Agent Childers's] testimony that [Ms. McFarland] was not a suspect in the murder under investigation." Id. at 440. The court, therefore, concluded that Agent Childers was not entitled to summary judgment on the claim arising out of the initial detention.

As to Ms. McFarland's second claim (arising out of Agent Childers's execution of the probable cause affidavits in October and December 1996), the district court relied on

6

evidence submitted in Ms. McFarland's summary judgment papers: the affidavits of two law enforcement officers. Those affidavits supported Ms. McFarland's contention that "making untruthful statements to law enforcement investigators is not something a reasonable officer would believe constituted a crime." Id. at 441. According to the district court, a jury could conclude from those affidavits that Agent Childers had acted unreasonably in executing the probable cause affidavits supporting Ms. McFarland's arrest. Thus, Agent Childers was not entitled to summary judgment on the claim based on the probable cause affidavits.

The district court expressly rejected Agent Childers's argument that the probable cause affidavits properly alleged a crime under Oklahoma law. It stated that Agent Childers was barred by the doctrine of collateral estoppel from raising that argument. The court cited the Coal County District Court's September 15, 1997 ruling dismissing the accessory-after-the-fact charge against Ms. McFarland and rejecting the prosecution's theory that one could be convicted of the offense by merely lying to a law enforcement officer. Because there was no evidence that that ruling had been appealed, Agent Childers could not challenge it in the instant case. The district court added that, in its view, the Coal County District Court's ruling was "sound and accurate in light of the current state of Oklahoma law on the subject." Id. at 443.

Finally, the court rejected Agent Childers's contention that she was entitled to qualified immunity. It stated that "[g]iven the explanations provided by [Agent Childers]

7

for the actions that she took and the law governing detention and probable cause for arrests," it could not determine on summary judgment that Agent Childers's actions were reasonable. Id. at 445.

## II. DISCUSSION

On appeal, Agent Childers challenges the district court's refusal to grant her qualified immunity. With regard to the claim arising out of Ms. McFarland's October 25, 1996 detention, she advances alternative arguments. First, she contends that, because Ms. McFarland consented to the questioning at the Coal County Sheriff's office, Ms. McFarland was not subjected to an unreasonable seizure in violation of the Fourth Amendment. Alternatively, Agent Childers argues that even if Ms. McFarland did not consent to the questioning, the decision to detain Ms. McFarland was made not by her but by the Coal County Sheriff. As a result, Agent Childers maintains, she is entitled to qualified immunity from Ms. McFarland's wrongful detention claim.

As to the claim arising out of the execution of the probable cause affidavits, Agent Childers challenges the district court's reading of Oklahoma law. In particular, she maintains that the district court erred in applying the doctrine of collateral estoppel to preclude her from challenging the September 15, 1987 ruling of the Coal County District Court. She further argues that the district court erred in interpreting Oklahoma law regarding the elements of an accessory-after-the-fact charge. Finally, Agent Childers

8

argues that she is immune from damages incurred by Ms. McFarland after the decision of the Atoka County District Attorney to file the accessory-after-the-fact charge against Ms. McFarland.

We begin our analysis by examining our jurisdiction over appeals involving the defense of qualified immunity. We conclude that we lack jurisdiction over Agent Childers's appeal of the denial of qualified immunity from Ms. McFarland's wrongful detention claim. As to Ms. McFarland's claim arising out of the execution of the probable cause affidavits, we conclude that Agent Childers is entitled to qualified immunity.

### A.  Jurisdiction Over Qualified Immunity Appeals

As a general rule, this court has jurisdiction to review only "final decisions" of the district courts. See  28 U.S.C. § 1291; Johnson v. Jones, 515 U.S. 304, 309 (1995). However, in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546 (1949), the Supreme Court held that certain collateral orders are appealable. In order to be appealable under the Cohen collateral order doctrine, a district court decision must:  (1) "conclusively determine the disputed question;"  (2) "resolve an important issue completely separate from the merits of the action;" and (3) "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

9

In Mitchell v. Forsyth, 472 U.S. 511, 528 (1985), the Court applied the collateral order doctrine to decisions denying public officials' claims of qualified immunity. It held that certain decisions could be appealed by public officials—those that determined whether or not certain given facts showed a violation of "clearly established" law and whether, as a result, the defendant public official was entitled to qualified immunity. Johnson, 515 U.S. at 311 (discussing Mitchell).

In spite of Mitchell's authorization of appeals of decisions denying qualified immunity, the Supreme Court has held that there is still a class of qualified immunity rulings not immediately appealable. See id. at 319-20. In particular, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at 320; see also Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997) (discussing Johnson). When the district court's summary judgment ruling merely determines the sufficiency of the evidence offered by the plaintiff in response to the defendant's factual assertions, the appeal is unlikely to involve the kind of abstract legal issues separate from the fact-related issues that will arise at trial. Thus, many of the justifications for applying the Cohen collateral order doctrine will not be present. See Johnson, 515 U.S. at 313-20.

This circuit has applied this jurisdictional limitation on qualified immunity appeals. For example, in Armijo v. Wagon Mound Public Schools, 159 F.3d 1253, 1259

10

(10th Cir. 1998), we noted that "where the district court makes a legal finding and states specific facts upon which that finding is based, we do not have jurisdiction to delve behind the ruling and review the record to determine if the district court correctly interpreted those facts to find a genuine dispute;" see also Myers v. Oklahoma County Bd. of County Comm'rs, 80 F.3d 421, 424-25 (10th Cir. 1996) (concluding that the court lacked jurisdiction to hear an appeal when "the district court denied summary judgment to the individual defendants on their qualified immunity defense on the sole basis that there was a genuine issue for trial regarding the reasonableness of defendants' conduct.") (internal quotations and citations omitted).

## B. Wrongful Detention Claim

In denying Agent Childers's motion for summary judgment on the claim arising out of Ms. McFarland's October 25, 1996 detention, the district court cited evidence indicating that Ms. McFarland did not consent to the questioning at the Coal County Sheriff's office:

> [Ms. McFarland] testifies that during the questioning by [Agent Childers], she asked to leave to go home and [Agent Childers] did not permit her to do so, facts which [Agent Childers] disputes. This action, if it occurred, transforms the investigative detention into a full-blown arrest, without any basis for doing so at that time given [Agent Childers's] testimony that Plaintiff was not a suspect in the murder under investigation. Taking [Ms. McFarland's] version of the facts as true as the non-moving party, which this Court is compelled to do for purposes of summary judgment, [Ms. McFarland's] conduct may rise to the

11

> level of a Fourth Amendment constitutional violation, given her explanation for the detention in light of the facts. This Court stresses that this conclusion is largely based upon [Agent Childers's] own testimony concerning her motivations for [Ms. McFarland's] detention.

Aplt's App. at 440 (Dist. Ct. Order, filed Feb. 4, 1999).

In her appellate brief, Agent Childers does not specifically address this evidence that the questioning of Ms. McFarland was not consensual. Instead, she merely identifies counter evidence: "[a]ll of the officers involved have testified that during that initial contact, Plaintiff was not under arrest and was advised of such." Aplt's Br. at 18. She further argues that, even if the encounter was not consensual, the Coal County Sheriff rather than Agent Childers should be held responsible for it. By advancing this argument, Agent Childers in effect challenges the district court's finding that there is evidence in the record supporting the contention that Agent Childers prevented Ms. McFarland from leaving the Sheriff's office, thus rendering the encounter nonconsensual and allowing it to be characterized as an arrest.[1]

Accordingly, Agent Childers's appellate argument requests this court to "review the record to determine if the district court correctly interpreted th[e] facts to find a genuine dispute" as to whether her encounter with Ms. McFarland was consensual. See Armijo, 159 F.3d at 1259. We lack jurisdiction over this kind of appeal of the denial of

---

[1] We note that Agent Childers does not argue here that Ms. McFarland's October 25, 1996 detention was based on reasonable suspicion or probable cause.

qualified immunity.  See Johnson, 515 U.S. at 311; Armijo, 159 F.3d at 1259.  Thus,

Agent Childers's challenge to the denial of qualified immunity as to Ms McFarland's

claim that she was wrongfully detained on October 25, 1996 will be dismissed.


### C. Claim Arising Out of Probable Cause Affidavits

In contrast to the wrongful detention claim, Agent Childers's appeal of the denial

of qualified immunity as to the claim arising out of her execution of the probable cause

affidavits does involve "the kind of abstract legal issues separate from the fact-related

issues that will arise at trial."  Johnson v. Martin, 195 F.3d 1208, 1214 (10th Cir. 1999);

see also Foote, 118 F.3d at 1422 (concluding that appellate jurisdiction exists when a

defendant challenges on appeal the district court's "determination that under either party's

version of the facts the defendant violated clearly established law").  In particular, Agent

Childers argues that a public official could reasonably conclude that, under Oklahoma

law, evidence that one has lied to a police officer may be sufficient to support a charge of

being an accessory after the fact to the commission of a felony.  As a result, she

maintains, she is entitled to qualified immunity from the claims arising out of her

execution of the probable cause affidavits.


### 1.  Collateral Estoppel

In considering Agent Childers's qualified immunity argument, we must first assess

the district court's conclusion that the doctrine of collateral estoppel bars her from challenging the September 15, 1997 finding of the Coal County District Court. That court found that the probable cause affidavits were legally insufficient to support the accessory-after-the-fact charge. As noted, the district court reasoned that the Coal County ruling was a final appealable decision, that there was no indication that the decision had been appealed, and that as a result, Agent Childers could not challenge it in the instant § 1983 case.

In determining the preclusive effect of the Coal County ruling, we apply Oklahoma law. See 28 U.S.C. § 1738; Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). "Under Oklahoma law, 'once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought upon a different claim.'" Kinslow v. Ratzlaff, 158 F.3d 1104, 1105 (10th Cir. 1998) (quoting Fent v. Oklahoma Natural Gas Co., 898 P.2d 126, 133 (Okla. 1994)). A party is precluded from litigating an issue only if he or she has had "'a full and fair opportunity' to litigate the issue in the prior action." Fent, 898 P.2d at 133 (quoting Underside v. Lathrop, 645 P.2d 514, 516 n.6 (Okla. 1982)). We have considered the application of collateral estoppel (or "issue preclusion") in circumstances analogous to the instant case. See Kinslow, 158 F.3d at 1105-07. In Kinslow, a plaintiff filed a civil rights action against two police officers who had arrested him for various traffic violations. Prior to the filing of the civil rights action, an Oklahoma court had found no

14

probable cause to prosecute the plaintiff and had dismissed the charges against him. In the civil rights case, the plaintiff argued that the Oklahoma court's dismissal precluded the federal district court from granting the officers qualified immunity.

We rejected that argument. Noting that "[i]n order for issue preclusion to apply . . . [the police officers] must have been parties to that criminal proceeding or in privity with the parties in that action," id. at 1106, we observed that the officers were not parties to the state court criminal case. As to the question of privity, we reasoned that "under Oklahoma's definition of privity, the officers were not in privity with the State of Oklahoma. The officers are being sued in their individual capacity in this action and their personal interests, which were not at stake in the criminal proceeding, differ from Oklahoma's interests." Id.; see also id. at n.3 ("While a government official sued in his official capacity may be in privity with the government, we are aware of no case in which a person, sued individually, has been precluded from litigating an issue because of a ruling adverse to the state in a prior criminal proceeding.") (citation omitted).

Kinslow is applicable here. Like the police officer defendants in that case, Agent Childers has been sued in her individual capacity. Like the defendants in Kinslow, Agent Childers was not a party to the prior criminal case. Because she has been sued in her individual capacity, she is not in privity with the parties in that case. We therefore conclude that Agent Childers is not precluded in the instant case from challenging the

Coal County District Court's September 15, 1987 ruling.[2]

2.  Qualified Immunity

Because the Coal County ruling is not preclusive, we proceed to the merits of Agent Childers's argument that she is entitled to qualified immunity from Ms. McFarland's claim arising out of the execution of the probable cause affidavits.  That claim is based on the allegation that Agent Childers's execution of the affidavits caused Ms. McFarland to be arrested without probable cause, thereby violating the Fourth Amendment.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 592-93 (10th Cir.1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Workman v. Jordan, 958 F.2d 332, 336 (10th Cir.1992) ("If [defendants'] actions are those that a reasonable person could have believed were lawful, defendants are entitled to dismissal before discovery.").  In order for a right to be "clearly

_____

  [2] We also note that the issue raised in this appeal differs from the issue resolved in the Coal County case.  As discussed below, the issue here is whether a reasonable officer could have concluded that there was probable cause to pursue the accessory-after-the-fact charge against Ms. McFarland.  In contrast, the issue of what an officer could reasonably believe was not resolved in the Coal County case.

16

established" for purposes of assessing entitlement to qualified immunity:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

The right at issue here is Ms. McFarland's right not be seized, detained, and prosecuted without probable cause. See generally Taylor v. Meacham, 82 F.3d 1556, 1559-61 (10th Cir. 1996) (discussing Fourth Amendment protections against baseless seizures and prosecutions). Probable cause to make an arrest exists "if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Jones v. City & County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988). Accordingly, Agent Childers is entitled to qualified immunity "if a reasonable police officer could have believed that probable caused existed to arrest [the plaintiff]." See Hunter v. Bryant, 502 U.S. 224, 228 (1991).

In rejecting Agent Childers's qualified immunity defense, the district court observed that the Coal County District Court "specifically, and correctly, found that no crime exists in Oklahoma for lying to a police officer or investigator of a crime." Aplt's App. at 443 (Dist. Ct. Order, filed Feb. 4, 1999). The district court also observed that Ms.

17

McFarland had submitted affidavits from two police officers stating that nothing in their training or experience "would lead to the conclusion that lying to a police officer is a crime and that they have made no such arrests themselves." Id. at 442. The court added that Agent Childers herself had acknowledged that "she knows of no instance where a crime has been charged as a result of lying to a police officer." Id. As a result, "[t]his calls into question whether a reasonably competent law enforcement officer would know that the crime for which [Agent Childers] was executing probable cause affidavits did not exist." Id.

The district court's reading of Oklahoma law is based on Farmer v. State, 40 P.2d 693 (Okla. Crim. App. 1935) (per curiam). In that case, the defendant appealed a conviction under Oklahoma's accessory-after-the-fact statute, which provided:

> All persons, who after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories.

Id. at 693 (citing 1931 Okla. Sess. Laws § 1809) (now codified at Okla. Stat. tit. 21, § 173). The evidence presented by the prosecution at trial established that the defendant had falsely told the sheriff investigating an assault that he did not know who the guilty parties were and that the defendant had done so "with the intent that such parties might escape from the arrest, trial and conviction for such offense." Id. at 694.

In response to the defendant's appeal in Farmer, the Oklahoma Attorney General filed a confession of error, stating that he "believe[d] that the mere fact of the telling the

18

sheriff a falsehood under such circumstances does not amount to a violation of the [accessory-after-the-fact] statute." Id. The Oklahoma Court of Criminal Appeals approved the confession of error. It cited cases from Virginia, Texas, and Nevada discussing the elements of an accessory charge. See id. (citing Wren v. Commonwealth, 67 Va. (26 Gratt.) 952, 1875 WL 5715 (Va. Apr. 22, 1875); Chenault v. State, 81 S.W. 971 (Tex. Crim App. 1904); Ex parte Overfield, 152 P. 568 (Nev. 1915)). Those decisions held that the following acts were not sufficient to establish an accessory after the fact charge: "merely suffering the principal to escape" and "knowing of a felony [and] fail[ing] to make it known to the proper authorities;" id. at 694 (quoting Wren, 1875 WL 5715, at *1); and "failure to disclose the whereabouts of a felon by one who had knowledge," id. at 694 (discussing Overfield). According to the Oklahoma Court of Criminal Appeals, the Texas decision (Chenault) held that "in order to make one an accessory after the fact some overt active assistance rendered to the felon personally was necessary." Id. (discussing Chenault).

In this appeal, Agent Childers argues that a case decided by the Oklahoma Court of Criminal Appeals more than forty years after Farmer—Wilson v. State, 552 P.2d 1404 (Okla. Crim. App. 1976)—supports her defense of qualified immunity. In Wilson, the prosecution charged the defendant with second degree murder, but the trial court allowed the jury to be instructed on the offense of accessory to a felony pursuant to Okla. Stat. tit. 21 § 173. Wilson, 552 P.2d at 1406. After the jury returned a guilty verdict on the

19

accessory charge, the defendant appealed.  In reversing the conviction, the Court of Criminal Appeals held that the trial court had erred in giving a lesser included offense instruction.  See id.  ("[I]t is a necessary concomitant that a felony must already have been committed in order for a person to be an accessory to the crime. . . .  It necessarily follows that the offense of accessory to a felony is a separate and distinct substantive crime, and is not a lesser included offense of the principal crime.").

Importantly, the Court of Criminal Appeals also concluded that "there is sufficient evidence to justify the filing of a new information charging [the defendant] with the offense of Accessory to a Felony if the District Attorney, in his discretion, so desires." Id. at 1407.  The Wilson court set forth the testimony upon which it based this conclusion about the evidence supporting an accessory charge, observing that, during cross-examination, the defendant had testified as follows:

> Q. Now, is it your story that all this was made up, that the story you gave the Sheriff that night was made up in order to protect the people that had actually committed the shooting?
>
> A. Yes.
>
> Q. You knew a crime had been committed.  You knew a person had been shot?
>
> A. After they picked us up, yes.
>
> Q. At the time you gave the story to the Sheriff, the one you say was made up, you knew that a man had been killed . . . or a person had been killed?
>
> A. Yes.

20

Q. You say you knew who had done it?

Q. Sir?

Q. You knew who had committed it?

A. No, I didn't know who.

Q. You were making up this story in order to protect the person that actually pulled the trigger, is that correct?

A. Yes.

Q. All of you agreed, to protect one another.

A. I don't understand the question.

Q. All of you agreed to make up the story to protect one another?

A. We agreed that . . .

Q. Protect everybody but Charlie is that what you're telling us?

A. Yes.

Id. n.16. (quoting Trial Tr. at 255).

In our view, Wilson supports Agent Childers's argument that her probable cause affidavits sufficiently alleged an accessory offense under Oklahoma law. The testimony that the Wilson court deemed sufficient to support an accessory charge consisted of no more that the defendant's admission that he had lied to a sheriff about who had committed a murder (i.e., had "ma[de] up this story in order to protect the person that actually pulled the trigger," id.). There is no discussion in the Wilson opinion of any

21

additional elements required to support an accessory charge.  The element that the <u>Farmer</u> court had required forty years earlier—"active assistance personally to the party charged with the felony," <u>Farmer</u>, 40 P.2d at 694—is not mentioned.

Our research has revealed no case decided after <u>Wilson</u> that has addressed the issue of whether the act of lying to a police officer is sufficient to support an accessory after the fact charge in Oklahoma.  We note in passing that courts in other jurisdictions have resolved the issue in various ways.  See <u>United States v. Osborn</u>, 120 F.3d 59, 64 (7th Cir. 1997) (noting uncertainty regarding the question of whether "something more than a simple lie may be required in order to establish a violation of [18 U.S.C. § 3, the federal accessory statute]," and that, "at the time of the events in question here, it was not clear that [the defendant's] lie to authorities fell outside the scope of 18 U.S.C. § 3"); <u>People v. Duty</u>, 74 Cal. Rptr. 606, 609 (Cal. Ct. App. 1969) (concluding that evidence of "supplying an affirmative and deliberate falsehood to the public authorities" was sufficient to support an accessory charge and noting contrasting conclusions reached by courts in other jurisdictions).  In any event, the Oklahoma Court of Criminal Appeals decision in <u>Wilson</u> reveals uncertainty regarding the application of the accessory statute to allegations of lying to law enforcement officers.[3]

---

[3] That uncertainty is reflected in the varying judicial opinions in the criminal case against Ms. McFarland.  As Agent Childers has observed, two Oklahoma judges concluded that the evidence was sufficient to support an accessory-after-the-fact charge, and one judge concluded that the evidence was insufficient.  <u>See</u> Aplt's Br. at 22.

We acknowledge that the expansive interpretation of the Oklahoma accessory statute advanced by the prosecution in the case against Ms. McFarland raises serious concerns. The statute refers to persons who "conceal or aid" the offender. See Okla Stat. tit. 21, § 173. Although there are arguably some false statements that may conceal or aid offenders, there may be instances in which the prosecution is unable to demonstrate that a false statement provided such assistance to the offender. As this court has observed in applying the federal accessory statute, 18 U.S.C. § 3, it is doubtful that anyone who engages in "less than enthusiastic cooperation with investigating authorities" should be subject to prosecution as an accessory. United States v. Lepanto, 817 F.2d 1463, 1468 (10th Cir. 1987). Here, it is unclear from the record before us how Ms. McFarland's initial false statements concealed or aided the offenders.

Unfortunately, aside from the conflicting reasoning in Farmer and Wilson, the Oklahoma courts have provided little guidance on the question of whether some false statements may support an accessory charge and, if so, how one can distinguish false statements that conceal or aid offenders from false statements that do no so conceal or aid. In light of the uncertainty in Oklahoma law, we conclude that it was not clearly established when Agent Childers executed the challenged probable cause affidavits in 1996 that Ms. McFarland's false statements to law enforcement officers were not sufficient to support an accessory-after-the-fact charge. Agent Childers is therefore entitled to qualified immunity as to the claim arising out of the execution of the probable

23

cause affidavits.[4]


### III. CONCLUSION

For the reasons set forth above, we conclude that we lack jurisdiction over Agent Childers's appeal of the denial of qualified immunity on Ms. McFarland's wrongful detention claim. With regard to Agent Childers's appeal of the denial of qualified immunity on Ms. McFarland's claims arising out of the execution of the probable cause affidavits, we exercise jurisdiction and conclude that Agent Childers is entitled to qualified immunity.

This appeal is therefore DISMISSED in part. The district court's order denying Agent Childers's motion for summary judgment on qualified immunity grounds is REVERSED in part. We REMAND the case to the district court for further proceedings

---

[4] We note that in response to Agent Childers's motion for summary judgment on qualified immunity grounds, Ms. McFarland submitted affidavits from two police officers stating that nothing in their training or experience indicated that lying to a police officer was a crime and that they have made no such arrests themselves. Although the experience of other officers may be relevant to certain determinations of reasonableness, these particular affidavits are not relevant here. Neither affidavit mentions the Wilson decision, and the officers' discussion of their own experience does not resolve the conflict between Wilson and Farmer. The question of whether a rule of law is clearly established for qualified immunity purposes is a legal one for this court to determine by examining applicable precedent rather than the experience of individual officers. See Barts v. Joyner, 865 F.2d 1187, 1193 (11th Cir. 1989) ("But on the issue of whether the pertinent law was clearly established, the opinion and decision of the state court do count. We cannot realistically expect that reasonable police officers know more than reasonable judges about the law.").

consistent with this opinion.[5]

_____

[5] As noted above, Agent Childers has also raised an issue regarding the proper measure of damages, arguing that Ms. McFarland is not entitled to recover damages incurred after the state prosecutor's decision to file the accessory charge against her. Agent Childers cites no authority allowing the consideration of the proper measure of damages in an interlocutory appeal concerning the denial of qualified immunity. Accordingly, we do not consider Agent Childers's damages argument in this appeal.

In any event, Ms. McFarland's only remaining claim involves her allegedly wrongful detention on October 25, 1996. We leave it for the district upon remand to determine how to instruct the jury on the proper measure of damages if a trial is held on this claim.