**UNITED STATES COURT OF APPEALS**

**May 1, 2024**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARREN JAMES JACKSON, SR.,

    Defendant - Appellant.

No. 23-3011
(D.C. No. 5:21-CR-40039-TC-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BACHARACH**, **BRISCOE**, and **MORITZ**, Circuit Judges.

_____

This case arises from a warrantless arrest based on an informant's statements to the police. The informant implicated Mr. Darren James Jackson, Sr. in a robbery. So the police arrested Mr. Jackson. When arrested, he had a gun. If the police had probable cause to arrest Mr. Jackson, the gun would be admissible.[1] Without probable cause,

---

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1]    When confronted by police, Mr. Jackson took something out of his waistband and slid it under his vehicle. The police later found a gun at this spot.

however, the gun would be inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

The district court found probable cause and deemed the gun admissible. These rulings led to a conviction of Mr. Jackson for unlawfully possessing a firearm. *See* 18 U.S.C. § 922(g)(1).

On appeal, Mr. Jackson challenges the district court's assessment of probable cause. Even if we credit those challenges, however, we would need to make our own assessment of probable cause. And we conclude, like the district court, that probable cause existed as to Mr. Jackson's participation in the robbery.

**1.    Two travelers report a robbery.**

The case stemmed from a report by two travelers, who said that they had been robbed at gunpoint. The police spoke twice to the travelers.

The first time, the travelers said that

- an acquaintance, Ms. Kinssley Mathews, had given them a ride,

- Ms. Mathews had stopped the car,

- another car had pulled up behind them, and

- three people had exited the other car and committed the robbery.

Both cars left, leaving the travelers stranded.

2

The next day, the police spoke again to one of the travelers. This time, the traveler said that Ms. Mathews had been a passenger and that a man had driven.

**2.    Ms. Mathews implicates Mr. Jackson in the robbery.**

The police asked Ms. Mathews about the robbery. She initially denied knowing the travelers, but the police told her that the travelers had picked her out of a lineup. An officer then confronted Ms. Mathews, and she admitted seeing Mr. Jackson participate in the robbery.

**3.    The police arrest Mr. Jackson and find a gun.**

After Ms. Mathews had identified Mr. Jackson, the police conducted surveillance and saw Mr. Jackson associating with other suspects in the robbery. The police then searched Mr. Jackson's house[2] and arrested him. He was carrying a gun at the time.

**4.    Mr. Jackson challenges the district court's assessment of probable cause.**

In district court, Mr. Jackson moved to suppress evidence of the gun, arguing that the police had lacked probable cause for the arrest. The

---

[2]    At oral argument, the government suggested that probable cause had existed for an arrest based on a judge's finding of probable cause for a search warrant. But "[i]t does not follow . . . that probable cause for a search warrant would necessarily justify an arrest." *Zurcher v. Stanford Daily*, 436 U.S. 547, 557 n.6 (1978).

district court denied the motion, finding probable cause based in part on Ms. Mathews's account.

Mr. Jackson challenges the ruling, arguing that probable cause didn't exist and that the district court erroneously

- deferred to the police officers' assessment of Ms. Mathews's credibility,

- relied on the voluntariness of Ms. Mathews's statement,

- disregarded facts that could have diminished Ms. Mathews's credibility, and

- treated Ms. Mathews as an eyewitness rather than as an informant.

Based on these arguments, Mr. Jackson urges us to reverse the denial of the motion to suppress or to remand for further findings.

**5.    Probable cause existed even if the district court had erred.**

We assume for the sake of argument that the district court erred in all these respects. Even if the court had erred, however, we would need to conduct de novo review over the assessment of probable cause. *See United States v. U.S. Currency $31,828*, 760 F.2d 228, 230 (8th Cir. 1985) (declining to remand, despite an error in finding probable cause, based on the appellate court's independent conclusion that probable cause existed).

### a.  We must decide whether probable cause exists based on all the circumstances.

*Probable cause* "exists 'if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed . . . an offense.'" *McFarland v. Childers*, 212 F.3d 1178, 1186 (10th Cir. 2000) (quoting *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)). To determine whether the officers had probable cause to arrest Mr. Jackson, we apply de novo review based on the totality of the circumstances. *United States v. Maley*, 1 F.4th 816, 821 (10th Cir. 2021).

The totality of circumstances can involve the informant's track record of providing accurate information, corroboration of an informant through independent evidence, face-to-face delivery of information, statements against the informant's penal interest, ability of the informant to observe the events first-hand, explicit or detailed descriptions of the alleged wrongdoing, potential motivations to lie, predictive accuracy of the information, and contemporaneous reporting. *See Illinois v. Gates*, 462 U.S. 213, 234, 241–42 (1983) (corroboration of information through independent evidence, ability to observe events first-hand, and explicit and detailed descriptions of the alleged wrongdoing); *United States v. Brown*, 496 F.3d 1070, 1075, 1077, 1079 (10th Cir. 2007) (informant's track

record, motive to lie, and contemporaneous reporting); *United States v. Jenkins*, 313 F.3d 549, 554–55 (10th Cir. 2002) (face-to-face delivery of information, statement against penal interest, ability to observe events first-hand, and explicit and detailed descriptions of the alleged wrongdoing); *United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir. 1992) (corroboration through independent evidence).

   b.    **Some factors undermine Ms. Mathews's reliability.**

Some of these factors weigh against probable cause. For example, Ms. Mathews

- initially denied knowing the travelers and

- had a motive to curry favor with the police and to implicate Mr. Jackson.

Before the robbery, Ms. Mathews was already facing drug charges and was a known drug-user. In addition, the travelers had already told the police that they thought Ms. Mathews had set up the robbery. So Ms. Mathews had reasons to downplay her own involvement.

Ms. Mathews also had a potential motive to put the blame on Mr. Jackson. Ms. Mathews told the police that she had a contentious history with Mr. Jackson, and the police implied that they thought Ms. Mathews was covering for others:

Police:         I don't think that you were a part of it, but I think you know who was, because these people picked you out of a lineup. So the decision you

6

> need to make is do I want to be part of this or be a witness?
>
> Ms. Mathews:    A witness.
>
> Police:         So tell me what happened.

R. vol. 1, at 62–63.

Finally, Ms. Mathews's account differed in four respects from what the police had seen or heard from the travelers:

1.    The two travelers were at first unable to describe any of the robbers or either vehicle. The next day, one traveler said that a male had driven the car and that Ms. Mathews had been a passenger. Ms. Mathews later said that she had driven the car.

2.    This traveler also described the car as light-colored and possibly gray. Ms. Mathews said that the car was blue (rather than light or gray).

3.    Ms. Mathews also said that Mr. Jackson had a gun and participated in the robbery; the travelers didn't say that anyone else in their car had gotten out or had a gun.

4.    Ms. Mathews said that the travelers had no luggage; the police saw that the travelers had a lot of luggage.

**c.    Other factors support Ms. Mathews's reliability.**

But we have three other reasons to credit Ms. Mathews's account:

1.    Ms. Mathews's account was corroborated by other independent evidence.

2.    She was present at the robbery, so she wasn't relying on second-hand accounts.

3.    Ms. Mathews didn't make her statements anonymously.

7

First, the court can appropriately rely on the corroboration from the travelers' statements and surveillance of Mr. Jackson. For example, the accounts by Ms. Mathews and the two travelers bore five common features:

1.  All of the accounts were consistent about why the travelers had contacted Ms. Mathews.

2.  One traveler said that Ms. Mathews wanted to visit a cemetery, and Ms. Mathews told the police that she had expressed a desire to visit her son's gravesite.

3.  All of the accounts involved two cars.

4.  All of the accounts had the travelers driving to Salina, Kansas, when the robbery had taken place.

5.  Ms. Mathews and one of the travelers said that another person had been in the car. Ms. Mathews identified the person as Mr. Jackson, and one of the travelers described the person as a man.[3]

Along with the travelers' accounts, the police had evidence of their surveillance of Mr. Jackson, which showed him associating with the other suspects and driving a gray car. That evidence corroborates Ms. Mathews's statement.

---

[3]    The traveler also told the police that the man was white and had short brown hair and a dark goatee. About a month later, Mr. Jackson was photographed for a mug shot; that photograph shows that Mr. Jackson was white with short brown hair and a dark goatee. Then, when the police made the arrest, they could see that Mr. Jackson was white and had a dark goatee.

A police investigator also knew about police reports of domestic violence, which corroborated Ms. Mathews's statements about her tumultuous relationship with Mr. Jackson.

Second, we consider Ms. Mathews's basis for implicating Mr. Jackson. Ms. Mathews said that she was physically present at the robbery. So the police knew that Ms. Mathews wasn't relying on second-hand information. Ms. Mathews's presence at the scene supports the reliability of her account. *See United States v. Jenkins*, 313 F.3d 549, 554–55 (10th Cir. 2002).

Third, Ms. Mathews didn't make her statements anonymously. We are "less skeptical" of informants who are not anonymous. *Donahue v. Wihongi*, 948 F.3d 1177, 1192 (10th Cir. 2020). After all, if a known informant fabricates information, the informant can be held responsible. *United States v. Tucker*, 305 F.3d 1193, 1201 (10th Cir. 2002) (explaining the reliability of informants who are not anonymous).

d.    **The balance of factors establishes probable cause for robbery.**

On balance, we regard Ms. Mathews's account as reliable enough for probable cause as to Mr. Jackson's participation in the robbery.

"[P]robable cause 'is not a high bar' . . . 'and credibility determinations are seldom crucial.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quoting *Kaley v. United*

9

*States*, 571 U.S. 320, 338 (2014), and *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975)).

Even though Ms. Mathews had no way of knowing what the travelers had told the police, their accounts were largely consistent. Ms. Mathews told the police that a car had followed them, just as the travelers had said. She also told the police that Mr. Jackson had been present, and one of the travelers had also said that a man had arrived with Ms. Mathews.

Despite the inconsistencies, a prudent police officer could regard the information as sufficiently trustworthy to believe that Mr. Jackson had participated in the robbery. We thus conclude that probable cause existed and uphold the denial of Mr. Jackson's motion to suppress.

\* \* \*

We reject Mr. Jackson's challenges to the finding of probable cause for the arrest. Even if the district court had erred in assessing probable cause, we would need to make our own assessment. In conducting that assessment, we conclude that the totality of circumstances supplied probable cause as to Mr. Jackson's participation in a robbery. We thus affirm the conviction.

Entered for the Court


Robert E. Bacharach
Circuit Judge

10